IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES M. V., | : | CIVIL ACTION |
|       Plaintiff | : | |
| | : | |
|    v. | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
|       Defendant | : | NO. 24-2566 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                 June 23, 2025

      Charles M. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration Commissioner's ("the Commissioner") final decision, denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff filed a brief supporting his request for review, the Commissioner responded to it, and Plaintiff has replied. For the reasons set forth below, Plaintiff's Request for Review will be denied, and Judgment will be entered in Defendant's favor and against Plaintiff.

      **I.**       **PROCEDURAL HISTORY**[2]

      On October 5, 2020, Plaintiff applied for DIB, alleging disability, beginning July 7, 2020, because of Post-Traumatic Stress Disorder ("PTSD"). R. at 10, 184. The claim was denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing. *Id.* at 10. On November 3, 2021, due to COVID-19 precautions, Plaintiff appeared for a telephonic hearing,

---

[1] Frank Bisignano became Commissioner of the Social Security Administration on May 7, 2025. Pursuant to Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted as Defendant in this suit. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.

[2] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record ("R.").

1

before Robert J. Ryan, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an attorney, and Bruce Martin, a vocational expert, testified at the hearing.  *Id.*  On February 7, 2022, the ALJ, using the sequential evaluation process ("SEP") for disability,[3] issued an unfavorable decision.  *Id.* at 10-23.  The Social Security Administration's Appeals Council denied Plaintiff's request for review, on March 30, 2022, making the ALJ's findings the final determination of the Commissioner.  *Id.* at 1-3.  Plaintiff sought review in this court on May 28, 2022; this court remanded the case on April 25, 2023.  *Id.* at 1712-14.

Plaintiff's subsequent DIB claim, dated September 28, 2022, was consolidated with his previous DIB application.  *Id.* at 1714.  On February 13, 2024, the ALJ held another hearing by telephone; Plaintiff, represented by an attorney, and Edith Edwards, a vocational expert ("the VE"), testified at the hearing.  *Id.* at 1681.  On April 8, 2024, the ALJ issued an unfavorable decision on the consolidated claims.  *Id.* at 1672, 1681.  After the ALJ's findings became the Commissioner's final determination, Plaintiff, again, sought review in this court on June 12, 2024.

---

[3]  The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled.  *See* 20 C.F.R. § 404.1520(g).

## II. FACTUAL BACKGROUND

A. <u>Plaintiff's Personal History</u>

Plaintiff, born on January 15, 1981, R. at 1671, was 39 years old on the alleged onset disability date. He has a bachelor's degree, is a combat veteran, and last worked in 2017. R. at 1684.

B. <u>Plaintiff's Testimony</u>

At the second administrative hearing, Plaintiff testified about his mental and physical limitations. He stated that the main reason he could not work was his inability to leave his home, *i.e.*, mental health problems. R. 1685. Loud sounds or certain smells remind him of his wartime military service and trigger panic attacks and bad reactions. *Id.* at 1686-87. He experiences panic attacks approximately two to four times a week. They typically last from 5 to 15 minutes; recovery takes up to an hour and a half. *Id.* at 1687-88. Plaintiff sleeps poorly, because of frequent nightmares. *Id.* at 1688.

Plaintiff explained that he dislikes being around and consciously avoids strangers. *Id.* at 1695. To help manage his PTSD symptoms, he takes his service dog wherever he goes. *Id.* at 1689. Plaintiff also takes Prazosin, a sleep aid that makes him groggy in the mornings. *Id.* at 1690. Additionally, he attends individual therapy once a week and group therapy approximately twice per week, to help manage his PTSD. *Id.* at 1689.

Plaintiff testified that he has a driver's license and drives between three and five times a week. *Id.* at 1684.

C. <u>Vocational Expert's Testimony</u>

In addition to his military service, Plaintiff has a long work history; he has performed various jobs at several skill and exertional levels. At the 2024 hearing, Plaintiff stipulated to the

VE's testimony from the 2021 hearing. *Id.* at 1673. The VE had characterized Plaintiff's past jobs as follows: retail sales jobs were light,[4] semi-skilled work;[5] security system monitor position was sedentary,[6] unskilled;[7] security guard was light; customer service representative was a light, skilled[8] position; physical therapy assistant was a medium,[9] skilled position; restaurant manager was a light, skilled job; and forklift operator was medium, semi-skilled work. *Id.* at 56-57.

The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience, who performs as follows:

> [He] can understand, remember, and carry out detailed but not complex instructions in a job that has few workplace changes, and is not dependent on public interaction. The individual cannot perform production rate or assembly line work. The individual can work in proximity to others, but not in tandem with them or as part

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

[8] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. . . . Other skilled jobs may require dealing with people, fact, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

4

of the team.

The VE responded that, although this hypothetical individual could not perform Plaintiff's past relevant work; they, nevertheless, could perform the unskilled and medium jobs of: (1) linen room attendant, 47,000 positions nationally; (2) janitor, 93,000 positions nationally; and the light job of (3) routing clerk, 39,000 positions nationally. *Id*. at 1703.

The ALJ's second hypothetical included the previous restrictions but added a scenario in which "due to psychologically based symptoms, the individual would be off task 20 percent of the workday on an ongoing basis." *Id.* at 1703-04. The VE opined that under such restrictions, the individual would be unemployable. *Id.* at 1704.

### III.   THE ALJ'S FINDINGS

In his decision, the ALJ issued the following findings:

1. [Plaintiff] last met the insured status requirements of the Social Security Act on June 30, 2022.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of July 7, 2020 through his date last insured of June 30, 2022 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, [Plaintiff] had PTSD as a severe impairment (20 CFR 404.1520(c)).

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, [the ALJ found] that, through the date last insured, [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember, and carry out detailed but not complex instructions at a job that has few workplace changes and is not dependent on public

5

      interaction; cannot perform production rate or assembly line work; and can work in proximity to others but not in tandem with them or as part of a team.

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on January 15, 1981 and was 41 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).

11. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from July 7, 2020, the alleged onset date, through June 30, 2022, the date last insured (20 CFR 404.1520(g)).

R. at 1662-63, 1664-66, 1671-72.

### IV. DISCUSSION

A. <u>Standard of Review</u>

      Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if substantial evidence supports them. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but

rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion. *Id.* Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91. Nor is the court permitted to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359; *see Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.     <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (1) medical evidence

7

meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents a return to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.   Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, while Plaintiff could not perform his past relevant work, he, nevertheless, could perform other work, because suitable jobs in the national economy exist in significant numbers. R. at 1703. The VE outlined two medium, unskilled jobs that Plaintiff could perform: (1) linen room attendant, and (2) janitor. *Id.* The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), he was not disabled from July 7, 2020, through June 30, 2022, the date last insured. *Id.* at 1672.

Plaintiff argues that the ALJ failed to evaluate properly evaluate the limitations caused by his PTSD, because he did not properly evaluate the medical opinion evidence. Pl.'s Br. at 4. The Commissioner counters that Plaintiff's arguments lack merit. Def.'s Resp. 3. This court finds that

8

the ALJ adequately and properly addressed the opinion evidence at issue.

> 1. The ALJ's Analysis of the Opinion Provided by Christopher Davis, LCSW, Does Not Provide a Basis for Remand

Plaintiff argues that the ALJ did not conduct an appropriate supportability or consistency analysis for the opinion provided by Christopher Davis, LCSW. Pl.'s Br. at 18. This court finds that Plaintiff's claim fails because the ALJ did, in fact, address the opinion's supportability and consistency.

Because Plaintiff filed his disability claim after March 27, 2017, the ALJ was required to apply new regulations when evaluating medical opinions. 20 C.F.R. § 404.1520c. Under new regulations, the ALJ need not defer to or give any specific evidentiary weight to medical opinions from treating sources. *Id.* at § 404.1520c(a). Rather, when an ALJ considers medical opinions in the record, new governing regulations indicate that supportability and consistency are the two most important factors.[10] 20 C.F.R. § 404.1520c(b)(2). Indeed, those are the only two factors an ALJ must consider explicitly. *Id.* Supportability refers to the objective medical evidence and accompanying explanation the medical source provides to justify those medical opinions. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to whether, and how consistent, the medical source's opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2). This court finds that by focusing on the supportability and consistency of Mr. Davis' opinion, the ALJ fully complied with the regulations concerning how to evaluate the persuasiveness of medical opinions. *See* 20 C.F.R. § 404.1520c(a), (c)(1)-(2).

The ALJ determined that Mr. Davis' assessment of marked and extreme limitations on his mental functioning was unsupported. *Id.* at 1668. More specifically, Mr. Davis provided an

---

[10] These regulations identify five factors for evaluating medical opinions that the ALJ should consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. § 404.1520c(c)(1)-(5).

9

inadequate explanation or rationale to support the claim of significant functional limitations. The ALJ also found the more extreme assessment inconsistent with "evidence most frequently showing subjective reports of doing well with conservative and routine treatment and frequently unremarkable exams." *Id.* The ALJ, in explicitly considering the required factors of supportability and consistency, found the opinion to be unpersuasive. He also cited substantial evidence, which is simply more than a mere scintilla. *Biestek*, 587 U.S. at 103. Hence, there is no basis to find that he committed legal error or that his determination lacked substantial evidence; Plaintiff's first assertion lacks merit.

2. The ALJ Appropriately Evaluated the Opinions of Drs. Charuworn and Kaicher

Plaintiff takes issue with the ALJ's determination that the opinions of Dr. Kanida Charuworn, MD, and Dr. David Kaicher, MD, were unpersuasive. Pl.'s Br. at 21. Both found that Plaintiff had marked and extreme limitations in maintaining attention and concentration. R. at 1669-70. The ALJ adequately explained why he found these opinions unpersuasive; namely, they were inconsistent with Plaintiff's daily activities and his testimony, and unsupported because they relied primarily on Plaintiff's subjective complaints rather than clinical findings.[11] *Id.* at 1669. The ALJ was "not require[d] . . . to use particular language or adhere to a particular format in conducting his analysis," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), rather, he only needed to provide a discernible basis for his decision that allows this court to conduct a meaningful review. *See Fargnoli*, 247 F.3d at 42; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). The ALJ did so here.

---

[11] The court notes that Plaintiff, himself, concedes that record evidence confirms that "[P]laintiff's attention and memory are 'good' or 'ok.'" Pl.'s Br. at 22.

## V. CONCLUSION

This court finds that the ALJ committed no error that warrants remand. Plaintiff's Request for Review is, therefore, denied. An implementing Order and Order of Judgment follow.